FILED
07-28-2026
Anna Maria Hodges
Clerk of Circuit Court
2026CV006988
Honorable J. D. Watts-15
Branch 15

**STATE OF WISCONSIN** **CIRCUIT COURT**

**MILWAUKEE COUNTY**

Exhibit A

**Kenjala Johnson, and N.H.,**
2610 N. Holton St.
Milwaukee, WI 53212,
-vs-
Plaintiff,

Case no:
Case Code: 30301

**Milwaukee Public School District,**
5225 W. Vliet St.
Milwaukee, WI 53208,

AUG12'26AM9:40

And

MPS - BOARD GOVERNANCE

**Beth A. Clement**
411 Green Bay Road,
Thiensville, WI 53092

Defendants.

## SUMMONS

The **STATE OF WISCONSIN**

To the above-named defendant(s):

You are hereby notified that the plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within (45) days after receiving this summons, you must respond with a written answer, *As that term is used in Wis. Stats. Ch. 802, to the complaint.* The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent to the Milwaukee County Clerk of Courts whose address is:

**Milwaukee County Clerk of Courts**
901 N. 9th Street, Room 104
Milwaukee, WI 53233

Sent to: Risk Mgmt ACA Thurman
By: JV
Date: 8-12-26

And to Attorney Briane F. Pagel, Plaintiffs Attorney, whose address is:

**Pagel Law Firm**
PO Box 620104
Middleton, WI 53562

You may have an attorney help or represent you.

If you do not provide a proper answer within (45) days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future and may also be enforced by garnishment or seizure of property.

Dated: **July 21, 2026**

**Pagel Law Firm**
Attorney for Plaintiff

*Electronically Signed By:*

*/s/ Briane F. Pagel*
Attorney Briane F. Pagel
State Bar No. 1025514

P.O. Address:
PO Box 620104
Middleton WI 53562
(608) 206-4324
briane@pagellawfirm.com

FILED
07-28-2026
Anna Maria Hodges
Clerk of Circuit Court
2026CV006988
Honorable J. D. Watts-15
Branch 15

**STATE OF WISCONSIN** **CIRCUIT COURT**

**MILWAUKEE COUNTY**

**Kenjala Johnson, and N.H.,**
2876 N. 37th St.,
Milwaukee, WI 53210

Case no:

Plaintiff, Case Code: 30301

-vs-

**Milwaukee Public School District,**
5225 W. Vliet St.
Milwaukee, WI 53208,

And

**Beth A. Clement**
411 Green Bay Road,
Thiensville, WI 53092

Defendants.

**Complaint**

**Now come the plaintiffs by their attorney Briane Pagel** and as and for a complaint against the above-named defendants hereby allege as follows:

1. Plaintiff **Kenjala Johnson** is a Wisconsin citizen residing at 2876 N. 37th St., Milwaukee, WI 53210. Johnson is the parent of plaintiff N.H.
2. Plaintiff **N.H.** is a minor, residing at 2876 N. 37th St., Milwaukee, WI 53210. N.H. is autistic and nonverbal.
3. Defendant **Milwaukee Public School District (MPSD)** is a Wisconsin governmental unit, a school district, organized and operating under the laws of the State of Wisconsin and as an arm of the State of Wisconsin. MPSD's principal office is located at 5225 W. Vliet St., Milwaukee, WI 53208. Alternatively, MPSD is the operating name for the Milwaukee Board of School Directors. At all times material hereto, MPSD owned, operated and controlled the school and employees referred to herein.
4. Defendant **Beth A. Clement** is a Wisconsin citizen who at all times material hereto was employed by MPSD. Clement's home address is 411 Green Bay Road, Thiensville, WI 53092.

## Jurisdiction And Venue:

5. The Court has jurisdiction over this case because it arises under the laws of the United States, 28 USC 1331. The Court has jurisdiction over the state-law claims asserted herein pursuant to 28 USC 1367.
6. All material events in this case occurred in Milwaukee County, which is in the Eastern District of Wisconsin.

## Notice of Claim Compliance:

7. Johnson previously served a notice of claim on MPSD and the City Clerk for the City of Milwaukee, doing so on Friday, December 26, 2025.
8. More than 120 days have elapsed since the serviced of the notice of claim and no formal allowance or disallowance was given to Johnson or N.H. or their attorneys.

## Background Facts:

9. N.H. at the time of the events herein was a 5-year-old child who attended Siefert School, an elementary school run by MPSD.
10. N.H. is autistic and nonverbal, and receives special education services as part of his education.
11. On or about September 29, 2025, N.H. was in his classroom, and was being attended to by defendant Clement.
12. N.H. was sitting on a carpet in the classroom, and was not engaged in any unruly, disruptive or dangerous behavior.
13. As N.H. was sitting on the carpet, Clement approached N.H. from behind and grabbed N.H. by the neck area with her forearm and upper arm, putting N.H. into a headlock, and also at the same time grabbing N.H. by his left wrist.
14. Clement then lifted N.H. off the ground in a headlock, swinging him violently and carrying him across the classroom and around a table.
15. Clement then dropped N.H. to the ground rather than placing him on the ground, and as N.H. struck the ground, Clement forcefully pushed N.H. to the floor with a closed fist striking N.H. in the back.

16. Clement did all of the foregoing actions without saying anything to N.H. or explaining why she was doing what she was doing.
17. N.H. did not resist Clement's actions or try to hurt Clement as she did these things. N.H. appeared to be frightened by the assault and battery.
18. Clement then began pushing and shoving N.H. to the ground and forcing his face towards the carpet, apparently in an effort to get N.H. to pick up blocks on the ground.
19. When N.H. struggled or tried to resist, Clement forced N.H. back down, and then stood N.H. up and forcefully guided him to other locations, with N.H. attempting to struggle away from her. Clement moved N.H. to another location and again forcefully made N.H. pick up more blocks.
20. Clement's actions were recorded by another aide in the room. This aide did not inform any supervisors of the incident until October 2 or 3, 2025, claiming she was afraid to report the incident because she feared it would be her word against Clement's.
21. When the aide did report the incident, she told Principal Deirdre A. Lafford, who was at all times material hereto the principal of Siefert School.
22. The aide who recorded the incident with N.H. had previously recorded two other videos, one on September 16, 2025 and one on September 22, 2025, in which Clements was "rough" with other students in her classroom.
23. Lafford did not report the incident to the police until October 6, 2025. Even after Lafford reported the incident to the police, she delayed contact with the investigating officers for 2 days.
24. Lafford also did not report the incident to either of N.H.'s parents until October 6, 2025.
25. During the investigation by the police, Johnson learned for the first time that there had been a second incident, on October 1, 2025; at this time a different aide saw Clement grab N.H. and squeeze him by his arm with sufficient force to cause N.H. to scream and cry; the aide also believed that Clement had pinched N.H.
26. The squeeze and pinch were also reported to Lafford on October 3, 2025, and Lafford failed to advise Johnson of this incident.
27. As a result of the incident, Johnson removed N.H. from the Siefert School for his own safety and well-being; N.H. had attended Siefert in 2024.
28. MPSD failed to properly investigate and supervise Clement's operation of her classroom.

29. MPSD has fostered a culture of tolerance of violence towards students that has resulted not only in N.H.'s injuries as alleged herein, but injuries and harm to other students, as well, including but not limited to:
    a. A teacher at Englebug School punched a 7-year-old student on April 29, 2026, and
    b. A teacher at Fairview Elementary grabbed a student by his sweatshirt hood and threw him to the ground, resulting in bruising on the student's back and neck on February 26, 2026, and
    c. A paraprofessional at Riverside High School struck a special education student and held him on down on a vent while the student struggled to get up, in October 2024; that same employee continued to work at MPSD and in November 2025 slapped a student.
    d. An aide at Story Elementary School slapped a first-grader in October 2023.
30. Upon information and belief, Lafford faced no negative employment repercussions for any actions or inactions alleged herein or for any conduct in any way related to the N.H. abuse and the delay in informing N.H.'s parents.

**First Cause of Action:**

**(Substantive Due Process):**

31. Reallege and incorporate the foregoing as though set forth fully at this point.
32. N.H. has a constitutionally-protected liberty interest, under both the United States and Wisconsin Constitutions, in his bodily integrity and personal security; this liberty interest protects N.H. from abuse by state actors.
33. Clement's conduct violated N.H.'s liberty interest by her conduct as alleged herein.
34. N.H. has suffered damages as a result of the violation of his due process rights and is entitled to compensation for his injuries.

**Second Cause of Action:**

**(Illegal Seizure)**

35. Reallege and incorporate the foregoing as though set forth fully at this point.

36. N.H. has the right, under both the United States and Wisconsin Constitutions, to be free from illegal and unreasonable seizures of his person.
37. Clement's conduct as alleged herein violated N.H.'s right to be free from illegal and unreasonable seizures of his person.
38. N.H. has suffered damages as a result of the violation of his due process rights and is entitled to compensation for his injuries.

**Third Cause of Action:**

**(Violation of Equal Protection)**

39. Reallege and incorporate the foregoing as though set forth fully at this point.
40. N.H. has the right, under both the United States and Wisconsin Constitutions, to be free from intentional discrimination based upon his race and disability.
41. Clement upon information and belief does not physically abuse non-disabled, or non-African American, students in order to get them to clean up the classroom.
42. Upon information and belief, Clement engaged in the behavior alleged herein because N.H. is autistic, or because he is African-American, or because of both qualities.
43. N.H. has thus suffered a violation of his right to equal protection under the federal and state constitutions.
44. N.H. has suffered damages as a result of the violation of his due process rights and is entitled to compensation for his injuries.

**Fourth Cause of Action:**

***Violation of Americans With Disabilities Act***

45. Reallege and incorporate the foregoing as though set forth fully at this point.
46. N.H. at all times material hereto was an individual with a disability within the meaning of 42 USC 12102 by virtue of his autism and related physical and intellectual impairments.
47. MPSD is a public entity within the meaning of 42 USC 12131(1); the ADA provides and requires that no qualified individual, including N.H., shall by reason of such disability be excluded from participation in and/or denied the benefits of services, programs, or activities of a public entity, or otherwise be subjected to discrimination, by any public entity.

48. N.H. was and is entitled to full, equal and safe access to MPSD's educational services, programs and activities, including but not limited to attendance at the school of his choice.
49. MPSD knew of N.H.'s disabilities and in particular his vulnerability to harm.
50. MPSD failed to provide N.H. with safe, nondiscriminatory access to its services and programs. MPSD's failures include but are not limited to failing to appropriately train and monitor employees such as Clement, failing to protect individuals such as N.H. from abuse and assault, failing to implement any practices or modifications to its practices to avoid such abuse and assault, and by maintaining policies, procedures, practices and customs which allow and/or encourage such behavior among employees and which discourage reporting of such behaviors.
51. MPSD's conduct reflects a deliberate indifference to known and obvious risks that disabled and nonverbal students are vulnerable, and uniquely vulnerable at that, to physical and mental harm when classrooms are inadequately staffed and monitored and when reporting is discouraged, especially but not solely because students like N.H. cannot self-report harm they suffer.
52. As a direct and proximate result of MPSD's actions and inactions, N.H. has suffered injuries including denial of safe access to education, physical and psychological harm, and other damages.

**<u>Fifth Cause of Action</u>**

**<u>Violation of The Rehabilitation Act:</u>**

53. Reallege and incorporate the foregoing as though set forth fully at this point.
54. N.H. is a qualified individual with a disability within the meaning of 29 USC 705(20).
55. MPSD receives federal financial assistance within the meaning of 29 USC 794.
56. MPSD is therefore required by federal law to ensure that N.H. and other students who qualify are for protection under the Rehabilitation Act are not excluded from participation in and enjoying the benefits of any program or activity, and that they are not discriminated against in the use and enjoyment of those programs or activities.
57. Although N.H. was otherwise qualified to participate in and receive the benefits of MPSD's educational programs and activities, MPSD denied N.H. the benefit of those

services and denied him his federal protections, doing so by reason of his disabilities through assigning inadequately trained and supervised staff to N.H.'s classroom, failing to protect N.H. from physical and mental abuse, failing to failing to implement any practices or modifications to its practices to avoid such abuse and assault, and by maintaining policies, procedures, practices and customs which allow and/or encourage such behavior among employees and which discourage reporting of such behaviors.

58. MPSD's conduct constitutes deliberate indifference towards N.H.'s federally protected rights.

59. As a direct and proximate result of MPSD's actions and inactions, N.H. has suffered injuries including denial of safe access to education, physical and psychological harm, and other damages.

**Sixth Cause of Action:**

**(Assault and Battery):**

60. Reallege and incorporate the foregoing as though set forth fully at this point.

61. Clement threatened and intended to cause physical harm to N.H. through her conduct as alleged herein.

62. Clement did in fact cause physical harm and unwanted physical conduct to N.H. through her conduct herein.

63. N.H. is entitled to an award of damages as a result of Clement's conduct.

**Seventh Cause of Action:**

**Negligence:**

64. Reallege and incorporate the foregoing as though set forth fully at this point.

65. MPSD failed in its obligations to appropriately investigate the background and character of, ensure proper training of, and to supervise, its employees including Clement and the aides who witnessed the assaults on N.H.

66. MPSD's conduct was a substantial factor in causing the two assaults on N.H.

67. N.H. suffered damages as a result of MPSD's negligence.

**Eighth Cause of Action:**

**Infliction of Emotional Distress:**

68. Reallege and incorporate the foregoing as though set forth fully at this point.
69. Defendant MPSD owed a duty of care to N.H. to avoid inflicting emotional distress on N.H. and to avoid allowing employees to inflict emotional distress on N.H.
70. Defendant MPSD failed to adhere to that duty of care and breached it, and MPSD's failure to act with reasonable care to avoid causing N.H. emotional distress was a substantial factor in causing harm to N.H.
71. Clement's conduct as alleged herein and as directed to N.H. was extreme and outrageous and would be reasonably believed to be a complete denial of N.H.'s dignity as a person.
72. N.H. suffered severe and substantial emotional distress as a result of the incidents alleged herein. This is evidence because N.H.'s face showed fear during the video, and because N.H.'s behavior changed after the incident, with N.H. being more subdued and fearful and limiting his interactions with people as well as being less playful and outgoing, and limiting his activities.
73. As a direct and proximate result of the foregoing, N.H. is entitled to an award of compensatory damages.

**Ninth Cause of Action:**

**Negligent Infliction of Emotional Distress:**

**(Plaintiff Johnson)**

74. Reallege and incorporate the foregoing as though set forth fully at this point.
75. Johnson is in a close relationship with N.H. as his mother.
76. Johnson witnessed the attack on N.H. contemporaneously, as Johnson viewed actual video of the attack; viewing the video of the action is the same as contemporaneously seeing the attack.
77. Viewing the video of the attack caused a severe and substantial emotional shock to Johnson, causing her to suffer from intense and ongoing anxiety, sleeplessness, worry, and dismay over her inability to protect her son and her fears that her son would suffer negative mental, physical and emotional consequences as a result of the attack by Clement. These conditions interfered with Johnson's daily life including causing her to

lose her appetite and sleep, to be unable to focus on her obligations and responsibilities, and to withdraw from social occasions and be less interactive with friends and relatives.

78. Johnson as N.H.'s parent had an obligation and duty to view the video in order to assess N.H.'s physical condition and the likelihood of physical or emotional injury to N.H., an obligation and duty made all the more paramount because N.H. could not self-report any injuries or harm.

79. Public policy dictates that parents in Johnson's position, a parent of a special-needs child who cannot report harm to himself, be allowed to make claims for negligent infliction of emotional distress under the circumstances alleged herein; these parents have a unique and special risk of harm from conduct of the sort alleged herein, in that they must entrust their children to so-called professionals and surrender their ability to protect their children to those professionals, and unlike parents of children who do not have special needs, cannot rely on their children to report when something harmful or injurious has happened; moreover, they cannot rely on their own observations of their child to cause them to investigate whether something has happened, as often (including in N.H.'s case) behavioral changes are not as observable and not as traceable to any specific incident, requiring parents of such children to be even more vigilant and observant.

80. Allowing claims of negligent infliction of emotional distress to be made by parents in circumstances such as those alleged herein is consistent with Wisconsin's and federal policy protecting individuals with developmental disabilities, and will discourage abuse of such individuals while allowing parents of such individuals to be compensated for the harm they suffer by having to witness, whether in person or on a video recording, an attack on their child.

**<u>Monell Allegations:</u>**

81. MPSD failed at all times material hereto to have and/or enforce any effective policies or training which would have prevented or were designed to prevent the type of conduct Clement engaged in herein.

82. MPSD further has an unwritten custom of tolerating child abuse and battery by its employees as shown by the examples herein, and upon information and belief other employees of MPSD have in the past engaged in similar actions and MPSD either

imposed no discipline or insufficient discipline to deter those actors and other employees from engaging in this conduct.

83. MPSD further has created an atmosphere where employees are afraid to report misconduct and physical abuse by other employees, and where its supervisory employees are allowed to delay reporting such incidents to law enforcement and the students' parents, and this atmosphere encourages and allows employees to engage in physical abuse of students without fear of repercussions.'

84. MPSD's board and policy makers were aware of the incidents of child abuse.

**Damages:**

85. Both N.H. and Johnson have suffered severe and substantial harms including emotional distress as a result of the actions and inactions alleged herein and both are entitled to an award of damages.

86. N.H. seeks an award of punitive damages against Clement; upon information and belief, Clement's conduct was the result of malice towards N.H., and further Clement's conduct *was in deliberate and intentional indifference* to N.H's *rights*.

87. N.H. will seek an award of reasonable attorney's fees where allowed by law to do so.

WHEREFORE plaintiffs request the Court award them such damages, costs and fees as are just and equitable in this action.

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES IN THIS ACTION.

Dated: **July 22, 2026**

**Pagel Law Firm**
*Electronically signed by:*

*/s Briane Pagel*
Bar no: 1025514
Plaintiff's Attorney

**Pagel Law Firm**
PO Box 620104
Middleton, WI 53562
(608) 206-4324
briane@pagellawfirm.com